UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
SHAMIEK NIXON,

                    Plaintiff,          **MEMORANDUM OPINION**
                                 Case No. 19-CV-5032 (FB) (RLM)

     -against-

THE CITY OF NEW YORK,
SERGEANT ROBERT MARTINEZ,
OFFICER ADRIAN THEOBALD,
LIEUTENANT ALEXANDER BOBO,
OFFICER LUIS NARANJO, OFFICER
LOIUS STEPHENSON, OFFICER
RAMIL CASIMIR, AND OFFICER
NOEL DAMICO.

                 Defendants.
------------------------------------------------x
 *Appearances*:

*For the Plaintiff*:                *For the Defendants:*
FRED BRIAN LICHTMACHER     JOHN EDMUND SCHEMITSCH
The Law Office of Fred Lichtmacher P.C.   JOSEPH P. ZANGRILLI
116 West 23rd Street, Floor 5      New York City Law Department
New York, NY 10011           100 Church Street,
                           New York, NY 10007

**BLOCK, Senior District Judge:**

     Plaintiff Shamiek Nixon ("Nixon") brings this action pursuant to 42 U.S.C.

§ 1983 against the City of New York ("City") and seven New York Police

Department officers for seven claims arising from Nixon's arrest on the evening of

January 13, 2018. The City and Sergeant Martinez, Sergeant Bobo, and Officer

Theobald ("defendants") have moved for summary judgment under Federal Rule

1

of Civil Procedure 56(a) as to all claims.[1] They are: (i) false arrest; (ii) malicious

prosecution; (iii) failure to intervene; (iv) failure to supervise; (v) retaliatory arrest

in violation of the First Amendment; (vi) denial of the right to a fair trial; and

(vii) municipal liability under *Monell v. Department of Social Services*, 436 U.S.

658 (1978). Whether there was arguable probable cause for Nixon's arrest is the

central issue for most of these claims.

## I.   FACTS

The relevant undisputed facts are contained in the parties' Rule 56.1

statements. At approximately 10:37 P.M. on the night of January 13, 2018, Xiyu

Jiang ("Jiang"), a Chinese food delivery driver, was delivering an order to an

apartment building "located at or around 790 Eldert Lane" in Brooklyn. Defs.'

Statement of Undisputed Facts ("SOF") at ¶ 4. When Jiang arrived at that address,

"he called for someone to come downstairs." *Id*. at ¶ 5. "Two African American

men came downstairs and approached [his] car." *Id*. at ¶ 6. When Jiang asked them

---

[1] The individual defendants are Lieutenant Alexander Bobo, Sergeant Robert
Martinez, Officers Adrian Theobald, Luis Naranjo, Louis Stephens, Noel Damico,
and Ramil Casimir. Nixon's operative complaint and the record are silent as to
how, if at all, Officers Luis Naranjo, Louis Stephens, Noel Damico, and Ramil
Casimir were involved in the incident and why they are named as defendants.
Accordingly, they are sua sponte dismissed as defendants. The three remaining
officers in the action are Sergeant Martinez, Officer Theobald, and Sergeant Bobo.
The Court acknowledges that Bobo is presently a Lieutenant, though the record is
unclear as to whether he was a Sergeant or an Officer at the time of the incident;
accordingly, he is referred to as "Sergeant" in the interest of consistency.

if they had called for Chinese food, they responded "yes." *Id*. at ¶ 7. "The shorter of the two men then walked up to the window and asked Mr. Jiang how much the food cost." *Id*. at ¶ 8. As Jiang was checking the price on his receipt, "the man punched Mr. Jiang in the eye and took the food." *Id*. at ¶ 9. The two men then "ran up the stairs into the building." *Id*. at ¶.

Jiang called 911 and told the operator through a Mandarin interpreter "that he had been punched in the face and [had] his food stolen by two men." *Id*. at ¶ 12. He also told the operator "that the shorter assailant was wearing a black jacket and the taller suspect was wearing a white jacket." *Id*. at ¶ 14.

Shortly after, Officer Theobald and Sergeant Bobo arrived and spoke to Jiang who "gave the officers the receipt that contained the phone number he called." *Id*. at ¶ 16. Sergeant Martinez also responded to the 911 call and "remained in a support role throughout." *Id*. at ¶ 58. Sergeant Bobo was the patrol supervisor that evening and "was in charge of the scene." *Id*. at ¶ 17. Jiang told the officers that "one of the males punched him in the face and took the delivery order." *Id*. at ¶ 20. He then "observed the two men run back into the building." *Id*. at ¶ 21.

According to defendants, "Officer Theobald proceeded to run the phone number he received from Mr. Jiang in a database and learned that it was connected to an apartment inside the 760 Eldert Lane apartment building." *Id*. at ¶ 22. The

3

parties agree that "760 Eldert Lane and 790 Eldert Lane are abutting apartment buildings." *Id*. at ¶ 23. Plaintiff maintains that "[d]efendants had access to two phone numbers from the complaining witness, neither of which belong to the apartment's sole occupant," and that "[t]here is no documentation of the results of the alleged reverse look up defendants contend they conducted." Pl.'s Resp. to Defs.' SOF at ¶ 22(a).

The officers asked Jiang to remain in his car "while they went inside the building." Defs.' SOF at ¶ 24. They "then entered the building to go to the apartment." *Id*. at ¶ 25. When they arrived, "a woman answered the door and asked if the officers were there for her grandson." *Id*. at ¶ 26. She invited them inside. While there, "the plaintiff entered." *Id*. at ¶ 28. "Approximately thirty minutes after the police officer [sic] went inside, they came outside and brought Mr. Jiang into the building." *Id*. at ¶ 34.

Jiang was then "escorted to an apartment and a man was asked to come outside of the apartment." *Id*. at ¶ 36. Jiang "recognized the plaintiff as one of the two men that came outside when he arrived with the delivery order," *id*. at ¶ 37, "because of his clothing, height and because he came outside for the delivery with the short male that punched him," *id*. at ¶ 38. Jiang identified plaintiff as "the accomplice involved in the robbery." *Id*. at ¶ 39.

4

Thus, "Jiang told the police that the plaintiff was not the man that punched him but that plaintiff was with the man who punched him in the face and stole the food." *Id*. at ¶ 40. Nonetheless, plaintiff was arrested "[a]fter Mr. Jiang told the police that the plaintiff was the accomplice." *Id*. at ¶ 41.

Plaintiff was then "taken back inside the apartment and overheard the officers say that they had one suspect and were looking for the next one." *Id*. at ¶ 42. He was "placed under arrest, taken to a police car, and transported to the 75th Precinct." *Id*. at ¶ 43. "Officer Theobald was the arresting officer and Sergeant Bobo verified the arrest as the supervising officer." *Id*. at ¶ 44. At the precinct, plaintiff "was found in possession of marijuana." *Id*. at ¶ 47.

Nixon was charged with multiple counts based on the assault and robbery of Jiang, plus unlawful possession of marijuana.[2] *See id*. at ¶ 51. All charges ultimately were dismissed. *See id*. at ¶ 54. Nixon "never saw or heard Mr. Jiang positively identify him as a suspect in the robbery," *id*. at ¶ 55, and "believes that the defendant officers fabricated the fact that Mr. Jiang positively identified him as a suspect," *id*. at ¶ 56.

---

[2] Nixon was charged under NY PENAL § 221.05 for unlawful possession of marijuana in the second degree, which is a violation punishable by a fine of no more than fifty dollars. Since the marijuana was found after the arrest, it is inconsequential to the probable cause analysis. *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004) (holding that probable cause analysis concerns the facts known to the arresting officer at the time of the arrest, not those discovered after the fact.)

The parties agree that plaintiff was in handcuffs when he was arrested but disagree as to why he had been cuffed before his arrest.[3] *See* Pl.'s Resp. to Defs.' SOF at ¶ 32(a). And although they agree that the officers decided to conduct a show-up to determine if plaintiff was one of the "suspects," they disagree as to whether plaintiff "fit the description of one of the robbery assailants," because "he was identified as a suspect he is not tall enough to be." *Id*. at ¶ 33. In Jiang's deposition, he described the man who punched him as "my height" and the accomplice as "taller than me, probably by like a head." Pl.'s Mem. in Opp. at Ex. 1, Dep. Jiang 10:14-15.

At oral argument, the principal contention of plaintiff's counsel was that there is a factual issue as to whether the identification at the show-up was overly suggestive since plaintiff was "dragged out and he's in the handcuffs and he's the only one there." Tr. of Oral Argument at 2 (March 20, 2023). Plaintiff's counsel also added that the officers went to the 760 building, where plaintiff's grandmother apparently lived, rather than to the 790 building on Jiang's receipt. *See Id*. at 10. Therefore, the officers apparently "went into the other building . . . that the

---

[3] Plaintiff was handcuffed when he was sitting on a couch in the apartment prior to the show-up. He contends that there was no legitimate reason to cuff him and hence was being unlawfully detained. Regardless, there is no dispute that he was under arrest at the time of the show-up.

criminal didn't run into." *Id*. Plaintiff's counsel believed, however: "if I don't get past [the identification] barrier, I have nothing." *Id*. at 3.

## II.   DISCUSSION

Summary judgment is appropriate if no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). District courts may decide summary judgment motions based on uncontested assertions in a party's Rule 56.1 statement. *Holtz v. Rockefeller & Co. Inc.* 258 F.3d 62, 73 (2d Cir. 2001).

### A. Probable Cause

Probable cause is an absolute defense to a false arrest claim. "[S]ummary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007). "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152-53 (2004). The validity of an arrest does not depend on an ultimate finding of innocence. *See, e.g., Finigan v. Marshall*, 574 F.3d 57, 61 (2d Cir. 2009).

A finding of qualified immunity also bars a false arrest claim. Officers are entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 556 U.S. 658, 664 (2012)). To find that an officer is entitled to such immunity, the Court need only find that an officer had "arguable probable cause" to make the arrest. *Escalera v. Lunn*, 361 F.3d 737, 742 (2d Cir. 2004). Arguable probable cause exists so long as "officers of reasonable competence *could disagree* on whether the probable cause test was met." *Id*. (emphasis added). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Defendants argue they had probable cause to arrest Nixon because of Jiang's positive identification notwithstanding that Nixon was in handcuffs at the time of the identification. *See United States v. Bautista*, 23 F.3d 726, 730 (1994). Regardless, the officers had every reason to view Nixon as a suspect and to detain

8

him. But as Jiang told the officers, "the plaintiff was not the man that punched him but that plaintiff was with the man who punched him in the face and stole the food." Defs.' SOF at ¶ 40.

The parties miss the mark. Whether the show-up was suggestive is irrelevant. That Nixon accompanied the perpetrator to retrieve the food does not mean that "an offense has been or is being committed by the person to be arrested." *Zellner,* 494 F.3d at 368.

There is nothing here that even suggests that Nixon knew that the perpetrator was going to punch Jiang and steal the food. *See, e.g., United States v. Di Re*, 332 U.S. 581, 583 (1948) (holding that there was no probable cause to arrest Di Re when he was in a car with an informant who was holding counterfeit coupons, when Di Re was neither seen holding the coupons nor named by the informant as possessing any); *cf. United States v. Delossantos*, 536 F.3d 155, 160 (2008) ("Whereas Di Re was merely seen sitting in the suspect's vehicle when officers approached, the agents here saw [a co-defendant] ferry Delossantos between the likely drug-stash location and the transaction point and heard Delossantos discuss details of the transaction.")

There are many facts upon which the parties have misfocused. Indeed, the record is replete with many unanswered questions, such as: Who was living at 790 Eldert Lane? Did the officers go to that apartment to find out? Did Nixon reside in

9

790 or was he just visiting his grandmother at 760? Why didn't the officers locate the perpetrator – who apparently exited from and returned to 790? Was the phone number that the officers claim they searched in a database on Jiang's receipt? Which phone number did Jiang call? To whom did it belong? The resolution of these factual curiosities and their arguable probable cause relevancy is best reserved for trial.

On the present record, the issue is whether defendants are entitled to qualified immunity as a matter of law based on what was "known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. The Court has perused the record and concludes that the only clearly established material facts known to the officers are: (1) that Nixon had accompanied the perpetrator to retrieve the food; and (2) that Jiang had told them that he "observed the two men run back into the building."

While it is true that the officers said that Jiang had told them that Nixon was "the accomplice," this is a legal conclusion and not a fact. There is nothing in the record that tells us the facts that underlie that conclusion. To the contrary, it is doubtful that a person who needed a Mandarin interpreter to call 911 would understand the meaning of that word in English and the facts that would warrant such a conclusion.

Whether the officers had arguable probable cause to arrest Nixon therefore boils down to whether the fact that Jiang told them that he "observed the two men run back into the building" is evidence of consciousness of guilt. Defs.' SOF at ¶ 21.

The seminal case on flight as evidence of consciousness of guilt is *Sibron v. New York.*, 392 U.S. 40 (1968), where the Supreme Court held that "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest." *Sibron* 392 U.S. at 66-67.

But *Sibron* is the antithesis of this case. There is no evidence of any "deliberatively furtive actions" by Nixon, and his running back to the building was not in response to the approach of strangers or law officers.

Nonetheless, the Court has held that the "bare fact" that someone "tried to leave the scene cannot create reasonable suspicion or probable cause." *United States v. Goines*, 604 F.Supp.2d 533, 542 (E.D.N.Y. 2009). Its holding was in keeping with the principle that it is "well settled that neither the mere presence of an individual at a scene of criminal activity nor an individual's flight, without any other indicia of criminal activity, establishes probable cause." *People v. Sanchez*, 714 N.Y.S.2d 521, 522 (2d Dept. 2000); *see United States v. Garguilo*, 310 F.2d

11

249, 253 (2d Cir. 1962) (holding that a defendant must be "a participant rather than merely a knowing spectator" to be an aider and abettor). This principle has long been clearly established. In the absence of some "other indicia of criminal activity," there could be no arguable probable cause to arrest Nixon. *Id.* There is simply nothing in the record to suggest that Nixon had conspired with the unknown perpetrator to punch Jiang and steal the food.

**B. Application**

Given that there is no basis to grant summary judgment for the defendants on this record, the Court now turns to deciding the viability of Nixon's seven claims.

i.      *False Arrest, Failure to Intervene, and Retaliatory Arrest*

The Court addresses the false arrest, failure to intervene, and retaliatory arrest claims together since they all rise or fall on the existence of probable cause.

First, summary judgment for the defendants as to Nixon's false arrest claim must be denied because the absence of probable cause is at its root. *See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (Stating the elements of a false arrest claim and explaining that probable cause is a dispositive question in this analysis).

The same is true for Nixon's failure to intervene claim against Sergeants Bobo and Martinez. For this claim, liability attaches if police "fail to intervene to

12

protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Morris v. City of New York*, 2015 WL 1914906, at *5 (E.D.N.Y. 2015); *see Sabrina v. Tezlof*, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (explaining that liability attaches if an officer "observes or has reason to know . . . that a citizen has been unjustifiably arrested"). Because a reasonable jury could find that that there was no arguable probable cause to arrest Nixon, and the arrest was made in the presence of Sergeants Bobo and Martinez, the failure to intervene claim against them survives for factual adjudication.

Likewise, Nixon's retaliatory arrest claim against defendants turns on whether the officers had arguable probable cause. Nixon argues that his First Amendment rights were violated when he was arrested in retaliation for attempting to record the officers on his cellphone. "The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019). Because this claim hinges on the existence of probable cause, its disposition is also better suited for a jury. Accordingly, the defendants' summary judgment motion is denied as to these three claims.

ii.    *Denial of Right to a Free Trial*

Nixon also alleges that Officer Theobald denied him his right to a free trial by fabricating evidence against him. This type of claim arises when "a police officer creates false information likely to influence a jury's decision and forwards

13

that information to prosecutors." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). Nixon alleges that Officer Theobald violated his right to a free trial by falsifying information in the criminal complaint, which stated that Nixon had attempted to grab Jiang during the robbery. *See* Pl.'s Mem. in Opp. at Ex. 6, Criminal Complaint ("Defendant attempted to grab onto informant but was unable to."). At his deposition Officer Theobald testified, however, that Nixon attempted to hit Jiang; not grab him. Pl.'s Mem. in Opp. at Ex. 5, Dep. Theobald 19:12-14 ("[O]ne male punched him in the face and took the food . . . [A]nother male came and almost hit him and then both males ran up the stairs.").

Be that as it may, Officer Theobald had no first-hand knowledge of the incident since he was not present, and at Jiang's deposition Jiang did not corroborate that Nixon had attempted to either hit or grab him. *See* Pl.'s Mem. in Opp. at Ex. 1, Dep. Jiang 11:18-21 ("Q: After he hit you and stole the food, what happened next? A: After that, they ran up stairs in to the building [sic]. And, I called 911."). It is not at all clear whether Officer Theobald was told that Nixon "almost hit" Jiang before or after the arrest occurred, if indeed he was told this at all. Pl. Mem. in Opp. at Ex. 5, Dep. Theobald 19:12-14. This discrepancy further supports the denial of summary judgment on Nixon's false arrest, malicious prosecution, and failure to intervene claims, as well as this claim. All these factual issues are best left to a jury.

14

### iii.    Malicious Prosecution

Nixon also alleges a malicious prosecution claim against defendants. To make out a claim for malicious prosecution, Nixon must show: "(i) the commencement or continuation of a criminal proceeding against [him]; (ii) the termination of the proceeding in [his] favor; (iii) that there was no probable cause for the proceeding; and (iv) that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citations and quotation marks omitted).

The parties do not dispute that the criminal charges brought against Nixon were terminated in his favor. Since arguable probable cause has not been established on this record, the only aspect of malicious prosecution that plaintiff must satisfy is the "actual malice" prong. But "malice may be inferred from the lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996). "Thus, if there is a question of fact for probable cause, there is also a question for malice." *Noga v. City of Schenectady Police Officers*, 169 F. Supp. 2d 83, 90. Malice is typically a fact question reserved for a jury. *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) ("Indeed, New York courts traditionally consider the issue of malice to be a jury question."). Accordingly, summary judgment is denied as to this claim, as well.

iv.    *Failure to Supervise*

Nixon brings a failure to supervise claim against Sergeants Bobo and
Martinez. However, there is no longer a separate cause of action for failure to
supervise. *Tangreti v. Bachmann*, 983 F. 3d 609, 618 (2020) (quoting *Ashcroft v.
Iqbal*, 556 U.S. 662, 676 (2009)) (Holding that under *Iqbal* pleading standards, for
liability to attach to a Government-official defendant, a court must find that "'each
Government-official defendant, through the official's own individual actions, has
violated the Constitution'"). Accordingly, Nixon's failure to supervise claim fails
as a matter of law.

v.    Monell *Liability*

Finally, Nixon brings a claim for *Monell* liability against the City. To
succeed on a *Monell* claim, plaintiffs must demonstrate that a policy or custom of
the City of New York caused a deprivation of their federal or constitutional rights.
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). Nixon fails to do so
since his claim is premised on the City's failure to adequately train and supervise
Sergeant Martinez, who is named in a lengthy list of civil lawsuits. However,
Sergeant Martinez was neither the arresting officer nor the supervising officer. He
was merely present at the scene and is not alleged by the parties to have played
more than a secondary role in the incident. In addition, Nixon has not alleged a

16

policy or custom of the City that caused a deprivation of his rights beyond mere

conclusory allegations. Accordingly, his *Monell* claim fails.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is

**GRANTED** as to the *Monell* claim and failure to supervise claim and **DENIED** as

to all other claims. Officers Luis Naranjo, Louis Stephens, Noel Damico, and

Ramil Casimir are dismissed as defendants.

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
April 6, 2023

17